Matthew H. Morgan (MN Bar No. 0304657)*
morgan@nka.com
Robert L. Schug (MN Bar No. 0387013)*
schug@nka.com
Charles A. Delbridge (MN Bar No. 0386639)*
cdelbridge@nka.com
Nichols Kaster, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Tel: (612) 256-3200; Fax: (612) 215-6870

Ryan F. Stephan*
rstephan@stephanzouras.com
James B. Zouras*
jzouras@stephanzouras.com
Catherine T. Mitchell*
cmitchell@stephanzouras.com
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: (312) 233-1550; Fax: (312) 233-1560

Daniel L. Bonnett (AZ #014127)
dbonnett@martinbonnett.com
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Tel: (602) 240-6900; Fax: (602) 240-2345

Attorneys for Plaintiff and the Putative Class
(*pro hac vice application forthcoming)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel James Jones,<br>                    Plaintiff,<br>          v.<br><br>GEICO Casualty Company;<br>GEICO Indemnity Company; and<br>GEICO General Insurance Company,<br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.:

**CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

-1-

COMPLAINT

**CLASS ACTION COMPLAINT**

Plaintiff Daniel James Jones ("Plaintiff"), by and through his attorneys and on behalf of himself and all others similarly situated, hereby submits this Class Action Complaint against Defendants GEICO Casualty Company, GEICO indemnity Company, and GEICO General Insurance Company ("GEICO" or "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.     This case is filed to end GEICO's practice of unfairly profiting from the global COVID-19 pandemic. As of the date of this filing, the United States has confirmed over 6 million coronavirus cases, and over 180,000 deaths. The State of Arizona alone has over 200,000 confirmed cases and more than 5,000 deaths. The numbers continue to rise.

2.     Beginning in March 2020, states across the country, including Arizona, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3.     While many companies, industries, and individuals have suffered as a result of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. As a result of this decrease in driving and accidents, the premiums charged by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive. In the second quarter of 2020 alone, GEICO had pre-tax underwriting earnings of $2.1 billion, which was an increase of 424% compared to the second quarter of 2019. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April.

4.     Despite full knowledge of these facts, GEICO has continued to charge and collect excessive premiums, and has failed to issue adequate refunds. The company's

COMPLAINT

"GEICO Giveback" program is woefully inadequate to compensate for the excessive premiums that customers have paid as a result of COVID-19. The program applies a 15% discount on new and renewal auto insurance policies only. It does not apply to the premiums that the customer has already paid or will continue to pay on policies already existing at the start of the COVID-19 pandemic. And even with respect to new and renewal policies, the 15% credit falls well short of what has been conservatively estimated as an adequate return of premiums.

5.      To remedy Defendants' unlawful conduct, Plaintiff brings this class action alleging violations of Arizona state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

7.      Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. § 1391 because Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8.      Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company are Maryland corporations with their principal place of business in Chevy Chase, Maryland. Defendants sell personal automobile insurance in states around the country, including Arizona. GEICO issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period.

9.     Plaintiff is an adult resident of Scottsdale, Arizona. Plaintiff has held two personal auto insurance policies purchased from GEICO during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the premiums paid by Plaintiff for these policies were unconscionably excessive. Despite this, GEICO failed to issue full refunds.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**A.     The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

10.     In late December 2019, a cluster of cases of pneumonia was reported in Wuhan, China. A novel coronavirus was identified, which became known as SARS-CoV-2. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States, and the virus quickly spread.

11.     By mid-March, there were thousands of confirmed cases of COVID-19 across the United States, including Arizona.

12.     Like many states around the country, Arizona responded to the worsening COVID-19 crisis with a series of measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

13.     On March 11, 2020, Governor Douglas A. Ducey issued a declaration of a Public Health State of Emergency. Schools were closed as of March 15, 2020.

14.     On March 16, 2020, the United States Centers for Disease Control and Prevention issued updated guidance recommending that individuals avoid social gatherings of more than 10 people and use drive-thru, pickup, and delivery options at restaurants and bars to slow the spread of the disease. The Arizona Department of Health Services issued similar guidance the following day and also encouraged working from home when possible.

COMPLAINT

15.     Beginning on March 20, 2020, Governor Ducey issued an Executive Order requiring the closure of all bars, movie theatres, and indoor gyms in counties with confirmed COVID-19 cases, along with on-site dining in restaurants in those counties.

16.     On March 31, 2020, Governor Ducey instituted a "Stay home, Stay healthy, Stay connected" policy, under which individuals were to limit their time away from their place of residence or property, other than for certain essential functions. The order remained in effect until April 30, 2020.

17.     On April 29, 2020, Governor Ducey issued an updated order regarding the Stay home, Stay healthy, Stay connected policy. The updated order continued to require individuals to, among other things, limit their time away from their place of residence or property, other than for certain essential functions. The order remained in effect until May 15, 2020.

18.     In mid-May, Governor Ducey rolled back some of the restrictions in the original Stay home, Stay healthy, Stay connected policy, but continued to encourage individuals to practice social distancing.

19.     On June 29, 2020, following a spike in confirmed cases of COVID-19 in Arizona and around the country, Governor Ducey paused the state's reopening. The Governor's new order, among other things, prohibited unapproved public events of more than 50 people, and paused operation of bars, indoor gyms, indoor theatres, and water parks until further notice.

20.     On July 11, 2020 Governor Ducey continued the pause and issued an order restricting indoor dining establishments to 50 percent of operating capacity and placing other restrictions on outdoor dining until further notice.

21.     On July 23, 2020, Governor Ducey issued a further executive order, again continuing the pause of the state's reopening.

**B.      GEICO Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

COMPLAINT

22.    Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry—stands to secure a windfall from COVID-19. The reason is simple. As one recent report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[1]

23.    Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of Arizona. Through the use of cell phone location data, it has been reported that vehicle miles traveled in Arizona dropped significantly from their January 2020 average in March and April of 2020:[2]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -28% |
| March 22 - March 28 | -57% |
| March 29 - April 4 | -63% |
| April 5 - April 11 | -66% |
| April 12 - April 18 | -64% |
| April 19 - April 25 | -61% |

Upon information and belief, decreases in pre-COVID miles traveled continued in May, June, and July 2020, and will continue for the foreseeable future.[3]

[1] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.
[2] *See id.* at 6-8.
[3] *See id.* at 2.

24. Automobile accidents have also decreased. For example, on March 30, 2020 it was reported that the Phoenix metro area saw a 75% decrease in accidents in the first two weeks of the stay-at-home order.[4]

25. As a result of this dramatic decrease in driving and auto accidents, the rates set—and thus the premiums charged—by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive. Auto insurance rates, including those set by GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the recent joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[5]

26. The excessive premiums collected by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. It has been reported that for the first quarter of 2020 alone, GEICO generated a pretax underwriting gain of $984 million.[6] This was an increase of 27.8% from the same period in 2019. And according to its parent company, Berkshire Hathaway, in the second quarter of 2020, GEICO generated pre-tax

---

[4] Steve Neilsen, *Car crashes down by 75% in Phoenix metro area as COVID-19 pandemic continues*, Fox 10 Phoenix, Mach 30, 2020, https://www.fox10phoenix.com/news/car-crashes-down-by-75-in-phoenix-metro-area-as-covid-19-pandemic-continuesl.

[5] CEJ/CFA Report, *supra*, at 4.

[6] *Geico's claim frequency falling even faster than Q1 data shows*, S&P Global (May 4, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequency-falling-even-faster-than-q1-data-shows-58431662.

COMPLAINT

underwriting earnings of $2.1 billion, which was an increase of 424% compared to the second quarter of 2019.

**C.    GEICO Has Failed to Refund Excessive Premiums to Plaintiff and Other Policyholders in Arizona**

27.    According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[7]

28.    At all relevant times, GEICO has been aware of the excessive premiums that it has charged to and collected from policyholders in Arizona as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

29.    In spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO will give customers a 15% credit on their personal auto insurance premiums, but only if they are new customers, or existing customers who renew their policy during the applicable time period. Specifically, the credit is given for six-month policies renewed or newly purchased between April 8, 2020 and October 8, 2020 and twelve-month policies renewed or newly purchased between April 8, 2020 and October 7, 2021.

30.    GEICO's credit program is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19. For existing customers who renew their policies, the credit does not apply at all to excessive premiums that the customer paid on their previous policies. And even with respect to new and renewal policies, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as a necessary refund of premiums.

---

[7] CEJ/CFA Report, *supra*, at 12-13.

31.    With full knowledge that its refund program was inadequate, GEICO has falsely claimed to its customers that it is in fact providing substantial and full relief. For example, on its website, GEICO falsely claims that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."[8] GEICO does not disclose that its program does not, in fact, fully pass the company's saving on to its customers, and GEICO does not disclose the amount of its excessive profits.

32.    Not surprisingly, GEICO's credit program has been met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade.[9] The CEJ/CFA report explains that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policyholders."[10]

33.    In late 2019, Plaintiff purchased a renewal auto insurance policy from GEICO for the period beginning on November 21, 2019 and ending on May 21, 2020. Plaintiff was charged $820.62 in premiums for that policy. Plaintiff again renewed for the period beginning on May 21, 2020 and ending on November 21, 2020. Premiums were $735.79. After a "GEICO Giveback credit" of $110.37, Plaintiff will pay $625.42 in premiums for that policy.

---

[8] FAQs About The Geico Giveback, https://www.geico.com/about/coronavirus/giveback/ (last visited July 21, 2020).
[9] *Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers as People Drive Less Due To COVID-19*, Consumer Federation of America (April 4, 2020), https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/.
[10] CEJ/CFA Report, *supra*, at 16.

COMPLAINT

34.     Both policies described above were in effect during the time period during which most of the United States, including Arizona, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite this, GEICO only gave Plaintiff an inadequate 15% credit on his most recent renewal policy and no refund or credit for Plaintiff's previous policy.

35.     Upon information and belief, thousands of other policyholders in Arizona have been injured by GEICO's policy and practice of charging and failing to refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

36.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

37.     The proposed class is defined as follows: All Arizona residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present.

38.     The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from GEICO's records.

39.     There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

40.     The common questions of law and fact include, but are not limited to:

    a.  Whether GEICO has a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

    b.  Whether GEICO's insurance rates and premiums are excessive;

    c.  Whether GEICO violated the covenant of fair dealing and good faith;

    d.  Whether the payment of full premiums by Plaintiff and the members of the putative class is excused by frustration of purpose;

1

      e.   Whether GEICO was unjustly enriched as a result of its charging and failure to fully refund excessive auto insurance premiums;

2

3

      f.   Whether GEICO has violated the Arizona Consumer Fraud Act through its charging and failure to fully refund excessive auto insurance premiums; and

4

      g.  the proper measure and calculation of damages.

5        41.     The questions of law and fact listed above will yield common answers for

6  Plaintiff and the class as to whether GEICO is liable for the alleged legal violations.

7        42.     Plaintiff's claims are typical of those of the members of the class. Plaintiff,

8  like other class members, was subject to the unlawful practices described herein.

9        43.     Plaintiff will fairly and adequately protect the interests of the class and has

10  retained counsel experienced in complex class action litigation.

11       44.     Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because

12  GEICO has acted on grounds that apply generally to the class, so that final injunctive

13  relief or corresponding declaratory relief is appropriate with respect to the class.

14       45.     This action is properly maintainable as a class action under Fed. R. Civ. P.

15  23(b)(3) because questions of law or fact predominate over any questions affecting

16  individual class members. A class action is superior to other methods in order to ensure a

17  fair and efficient adjudication of this controversy because, in the context of similar

18  litigation, individual plaintiffs often lack the financial resources to vigorously prosecute

19  separate lawsuits in federal court against large corporate defendants. Class litigation is

20  also superior because it will preclude the need for unduly duplicative litigation resulting in

21  inconsistent judgments pertaining to GEICO's policies and practices. There will be no

22  difficulties in managing this action.

23       46.     In the alternative, class treatment is appropriate under Fed. R. Civ. P.

24  23(c)(4) because this is a case in which class adjudication of particular issues would serve

25  the interests of judicial economy.

26

27

28

COMPLAINT

## CAUSES OF ACTION

## COUNT I

**Breach of Contract - Violation of the Covenant of Good Faith and Fair Dealing
(On Behalf of Plaintiff and the Putative Class)**

47.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

48.     Under Arizona law, a covenant of good faith and fair dealing is implied into every contract. A party breaches the implied covenant of good faith and fair dealing when one party exercises discretion retained or not foreclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain.

49.     Plaintiff and the members of the putative class purchased insurance contracts from GEICO. As a result of the conduct described herein, GEICO violated the covenant of good faith and fair dealing by exercising discretion retained or not foreclosed under these contracts in such a way as to deny a reasonably expected benefit of the bargain to Plaintiff and the members of the putative class.

50.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

## COUNT II

**Unjust Enrichment
(On Behalf of Plaintiff and the Putative Class)**

51.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

52.     As a result of GEICO's charging and failure to fully refund excessive auto insurance premiums as described herein, GEICO has been unjustly enriched, and Plaintiff and the members of the putative class have been impoverished. There is no justification for the enrichment or the impoverishment.

53.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

## COUNT III

**Frustration of Purpose**
**(On Behalf of Plaintiff and the Putative Class)**

54.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

55.     At the time Plaintiff and the members of the putative class purchased auto insurance policies from GEICO, the full effects of the global COVID-19 pandemic were not reasonably foreseeable. The non-occurrence of such an event was a basic principle on which the policies were based.

56.     As a result of the global COVID-19 pandemic, the principle purposes of the policies were severely frustrated and is not within the risks assumed under the policies. It cannot be inferred from either the language of the contracts or the circumstances that the risk of the frustrating occurrence or the losses caused thereby should be placed on Plaintiff and the members of the putative class.

57.     Plaintiff and the members of the putative class seek a declaration that full payment of premiums is no longer required, and that any excessive premiums paid to date must be disgorged by GEICO.

## COUNT IV

**Arizona Consumer Fraud Act**
**(On Behalf of Plaintiff and the Putative Class)**

58.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

59.     The Arizona Consumer Fraud Act ("ACFA") provides that:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such

-13-

concealment, suppression or omission, in connection with the sale or advertisement
of any merchandise whether or not any person has in fact been misled, deceived or
damaged thereby, is declared to be an unlawful practice.

Ariz. Rev. Stat. Ann. § 44-1522.

60.    GEICO's conduct, as described herein, violates the ACFA. With full
knowledge that its COVID-19 refund program is grossly inadequate, GEICO falsely
claims to its customers that it is providing substantial and full relief. GEICO does not
disclose that its refund program does not, in fact, provide full relief, and GEICO does not
disclose the amount of its excessive profits to its customers. Nor does GEICO disclose
that its premiums are not based on an accurate assessment of risk.

61.    GEICO intended for Plaintiff and the members of the putative class to rely
on GEICO's misrepresentations and omissions of material facts by remaining customers
of GEICO, renewing existing insurance policies from Defendant, and buying new
insurance policies from GEICO.

62.    Plaintiff and the members of the putative class have been injured as a direct
and proximate result of GEICO's deceptive conduct in violation of AFCA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the
putative class, prays for relief as follows:

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.    The appointment of Plaintiff as class representative and his counsel as class
counsel;

C.    A declaration that the practices complained of herein are unlawful and
violate the laws of Arizona alleged herein;

D.    An injunction against Defendants from engaging in the unlawful practices
complained of herein;

E.    Awarding Plaintiff and the members of the putative class their damages in
an amount to be determined at trial, including compensatory damages,

-14-

1   consequential damages, punitive damages, and any other damages provided

2   under relevant laws;

3   F.   Disgorgement of, restitution of, and/or imposing a constructive trust upon,

4   the ill-gotten gains derived by Defendants from their unjust enrichment;

5   G.   An order awarding Plaintiff and the class attorneys' fees, costs, and expert

6   costs;

7   H.   An order awarding Plaintiff and the members of the putative class pre-

8   judgment and post-judgment interest, as allowed by law; and

9   I.   Such further relief as may be appropriate.

10   **<u>DEMAND FOR JURY TRIAL</u>**

11   Plaintiff demands a trial by jury on all issues so triable.

12   Respectfully Submitted,

13

14   Date: September 3, 2020

15   */s/ Daniel Bonnett*
Daniel L. Bonnett

16   MARTIN & BONNETT P.L.L.C.
4647 N 32nd Street, Suite 185

17   Phoenix, AZ 85018
Tel: (602) 240-6900

18   Fax: (602) 240-2345

19

20   */s/ Robert L. Schug*

21   *Matthew H. Morgan

22   *Robert L. Schug
*Charles A. Delbridge

23   NICHOLS KASTER PLLP
80 South Eighth Street

24   4600 IDS Center

25   Minneapolis, Minnesota 55402-2242
Tel: (612) 256-3200

26   Fax: (612) 338-4878

27

28

-15-

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/Ryan F. Stephan
*Ryan F. Stephan
*James B. Zouras
*Catherine T. Mitchell
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: (312) 233-1550
Fax: (312) 233-1560

*Attorneys for Plaintiff and the Putative Class*

*\* pro hac vice application forthcoming*

COMPLAINT