**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel James Jones,<br><br>    Plaintiff,<br><br>v.<br><br>GEICO Casualty Company, et al.,<br><br>    Defendants. | No. CV-20-01734-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 27). Plaintiff filed a Response in Opposition (Doc. 28), and Defendants filed a Reply (Doc. 29). In addition, the Court, after Defendants posed no opposition, granted Plaintiff's request to file a Sur-Reply (Doc. 34), to which Defendants have responded (Doc. 35). The matter is ripe, and the Court will now issue its decision.[1]

**I.    Background**

In his First Amended Class Action Complaint ("FAC"),[2] the named Plaintiff Daniel Jones alleges Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively "Geico") charged "unconscionably excessive" auto insurance rates during the Covid-19 pandemic. (Doc. 21 at ¶ 25). As

---

[1] Both parties requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The Court will assume the FAC's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

pandemic-related lockdown measures went into effect, fewer people left their homes to drive and, therefore, there were significantly fewer automobile accidents. (*Id.* at ¶¶ 23, 24). With fewer accidents, Geico received fewer insurance claims and an accompanying "windfall" of profits. (*Id.* at ¶ 27).

To compensate its customers for this windfall, Geico started a "GEICO Giveback" program in the spring of 2020, which gave new and preexisting customers a 15% credit to buy or renew a policy. (*Id.* at ¶ 30). As stated on the Geico website, "shelter in place laws have reduced driving, and [Geico is] passing these savings on to our auto, motorcycle, and RV customers." (*Id.* at ¶ 32). However, Plaintiff alleges this program was inadequate because the Center for Economic Justice and the Consumer Federation of America say consumers should get a 30% refund on their premiums to compensate for Geico's windfall. (*Id.* at ¶ 28).

Plaintiff renewed his Geico policy (the "Policy") for the period of November 2019 to May 2020 for $820.62. (*Id.* at ¶ 35). He then renewed the Policy for the period of May 2020 to November 2020, and because of the GEICO Giveback program, Plaintiff received a $110.37 credit, which reduced the renewal cost to $625.42. (*Id.*) Plaintiff alleges he renewed the Policy because Geico failed to disclose its windfall, because it failed to disclose that its premiums were not based on an accurate assessment of automobile risk during the pandemic, and because Geico failed to disclose that its Giveback program is not as favorable to consumers as other insurers' refund programs. (*Id.* at ¶ 36).

The FAC alleges that Geico had the discretion to lower its premiums under the terms of the Policy itself. (*Id.* at ¶ 56). It also alleges Geico "improperly exercised" that discretion by "failing to adjust premiums downward and to issue refunds of the now-excessive premiums." (*Id.* at ¶ 39).

The FAC brings four causes of action. Count I alleges Geico breached the insurance Policy's covenant of good faith and fair dealing. (*Id.* at ¶¶ 53–60). Count II seeks declaratory relief resulting from Geico's alleged frustration of the Policy's purpose, for which Plaintiff requests the Court declare he and his class members are no longer required

to pay their insurance premiums and that Geico disgorge its windfall. (*Id.* at ¶¶ 61–67). Count III alleges that Geico's conduct violates the Arizona Consumer Fraud Act through deceptive statements made about its premiums. (*Id.* at ¶¶ 68–78). Finally, Count IV alleges that if Geico is not liable for the other Counts, then it should, in the alternative, be liable for unjust enrichment. (*Id.* at ¶¶ 79–84).

Geico moves to dismiss the entire FAC under Federal Rule of Civil Procedure 12(b)(6). (Doc. 27 at 1).

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint alleges fraud, then it "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per

curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, it "must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (cleaned up).

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.   Analysis**

Geico argues all four of the FAC's Counts fail to state a claim. (Doc. 27). The Court will address each of them in turn. After discussing the Counts, the Court will address Geico's argument that Defendants GEICO Indemnity Company and GEICO General Insurance Company should be dismissed from this action entirely. (*Id.* at 16).

   **a.  Breach of the Covenant of Good Faith and Fair Dealing**

Count I alleges that Geico breached the insurance Policy's implied covenant of good faith and fair dealing. (Doc. 21 at ¶¶ 53–60). Every contract, in addition to its terms, contains an implied covenant of good faith and fair dealing. *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28 (Ariz. 2002). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement

or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (1986). "A party breaches the implied covenant of good faith and fair dealing when one party exercises discretion retained or not foreclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Zaki v. Capstone Asset Mgmt. LLC*, 2020 WL 1062039, at *3 (Ariz. Ct. App. Mar. 5, 2020).

Here, Plaintiff argues Geico impeded a reasonably expected benefit of the Policy, which was that Geico would lower its rates if the risk of a claim were to significantly decrease. (Doc. 28 at 7). This duty, Plaintiff argues, existed independently from the Policy, so long as the Policy itself did not explicitly foreclose it. (Doc. 28 at 7 n.4).[3] Furthermore, even though Geico did lower its rates to some extent, Plaintiff's argument implies that the Giveback program's 15% discount did not satisfy this implied covenant. (*See* Doc. 21 at ¶ 35). In response, Geico argues the Court should reject Plaintiff's claim because it cannot reasonably be expected to reduce its rates in response to unexpectedly diminished risk as that is "the very nature of insurance." (Doc. 27 at 11).

To begin its analysis, the Court turns to general principles of Arizona contract law. The interpretation of an insurance contract is a legal question to be decided by the court. *Thomas v. Liberty Mut. Ins. Co.*, 842 P.2d 1335, 1337 (Ariz. Ct. App. 1992). "[I]n determining contract rights, courts are not constrained by textual omissions to abandon common sense and experience or to ignore the surrounding circumstances of an agreement." *Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 838 P.2d 1314, 1321 (Ariz. Ct. App. 1992).

Here, the surrounding circumstance is that Plaintiff purchased the insurance Policy during a time of great uncertainty. The purpose of insurance contracts for the insured, as

---

[3] Geico argues that the Policy's language did not grant the discretion to adjust Plaintiff's premium. (Doc. 27 at 9). However, the Court finds the Policy's language does not foreclose Geico's ability to adjust the premium. (*See* Doc. 27-2). Therefore, the discretion exists whether the Policy acknowledges it or not. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002) ("Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms, but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain.").

- 5 -

the Arizona Supreme Court discussed in *Rawlings*, is to purchase protection against the possibility of financial disaster, or "economic catastrophe." 726 P.2d at 570.

> Obviously, the insured buys the company's express agreement to pay certain types of claims. . . . In delineating the benefits which flow from an insurance contract relationship we must recognize that in buying insurance an insured usually does not seek to realize a commercial advantage but, instead, seeks protection and security from economic catastrophe. Thus, the insured's object in buying the company's express covenant to pay claims is security from financial loss which he may sustain from claims against him and protection against economic catastrophe in those situations in which he may be the victim. In both cases, he seeks peace of mind from the fears that accompany such exposure. . . . Because of the disparity in bargaining power and the nature of the contract, the insurer receives both premium and control [over the defense of claims made against the insured].

*Id.* (citations omitted).

To protect these reasonably expected benefits, the law implies a covenant of good faith and fair dealing. *See Zaki*, 2020 WL 1062039, at *3. Plaintiff has not alleged that the obviously expected benefit of buying an insurance policy, coverage for claims, has been impeded. Instead, Plaintiff argues that he reasonably expected Geico would compensate him to a greater extent in the event the risk of driving was dramatically reduced. Stated differently, Plaintiff argues that because the agreement turned out to be a better deal for Geico, Geico was obliged to give more money back to Plaintiff, otherwise it would be "unfair." (Doc. 21 at ¶ 28).

Plaintiff has not cited, nor can the Court find, any similar case upon which such a claim was based. Although the law of this implied covenant is "inexact," it has its limits. *Sw. Sav. & Loan Ass'n*, 838 P.2d at 1319. "If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." *Id.* The Court finds that if it were to accept the reasoning behind Plaintiff's claimed breach of the covenant of good faith and fair dealing, its holding would drastically impair the predictability required by an orderly commerce.

Plaintiff styles this Count as one stemming from the breach of an implied covenant,

but, at bottom, Plaintiff argues Geico's "unfair windfall" is unconscionable and that the Court should rescind the contract by issuing a declaration that "full payment of premiums is no longer required, and excessive premiums paid to date must be disgorged . . . ." (*Id.* at ¶ 29). However, "[c]ourts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain . . . ." *Nelson v. Rice*, 12 P.3d 238, 243 (Ariz. Ct. App. 2000) (quoting *Dillman & Assocs., Inc. v. Capitol Leasing Co.*, 442 N.E.2d 311, 317 (Ill. App. Ct. 1982)). Courts do not rescind a contract just because the results appear unfair in hindsight. *Nelson v. Rice*, 12 P.3d 238, 243 (Ariz. Ct. App. 2000).

In addition, Plaintiff's argument ignores the inherent risk parties take on when entering into an insurance agreement. The insured necessarily accepts the risk that he will have bought a policy that he will not need, and the insurer necessarily accepts the risk that the insured's claims will be higher than the premium. *See Rawlings*, 726 P.2d at 570. Here, the risk that Plaintiff accepted has materialized. Although Plaintiff may argue in hindsight that the premium is unfair, that is not sufficient ground to show Geico has somehow breached an implied duty of good faith and fair dealing. *See Nelson*, 12 P.3d at 243.

If the Court were to accept the basis of Plaintiff's claim, it would necessarily hold that a party who has profited from a contract due to unforeseen events must pay its windfall to the other party. In that case, each and every contract would be at risk of a post-hoc good faith and fair dealing claim, which would corrode "the predictability that an orderly commerce requires." *Sw. Sav. & Loan Ass'n*, 838 P.2d at 1319. Plaintiff tries to cabin this result by claiming Geico is only required to adjust its rates when faced with a pandemic. (Doc. 28 at 7 n. 3). But Plaintiff cites no authority for why the Court should accept the pandemic as a special exception. Plaintiff concedes that Geico is not required to constantly adjust its rates in response to risk in normal times. (*Id.*) The Court sees no reason why it should be required to do so now.

Considering the surrounding circumstances of the insurance contract at issue, and using its own common sense, the Court will dismiss Count I. *See Iqbal*, 556 U.S. at 679

(courts may use common sense to evaluate a claim's plausibility); *Sw. Sav. & Loan Ass'n*, 838 P.2d at 1321 (courts may look to context and common sense when evaluating contract claims).

### b. Frustration of Purpose

Count II of the FAC argues the parties entered into their agreement assuming that the pandemic would not occur, and, because the pandemic did occur, Plaintiff should be excused from paying part of his premiums. (Doc. 21 at ¶¶ 61–67). The Count is stylized as one for "Declaratory Relief–Frustration of Purpose." (*Id.*)

Under the frustration of purpose doctrine, a party must show four elements to warrant relief. *Next Gen Cap., L.L.C. v. Consumer Lending Assocs., L.L.C.*, 316 P.3d 598, 600 (Ariz. Ct. App. 2013). First, the "frustrated purpose" must have been the party's principal purpose and understood as such by both parties. *Id.* Second, the frustration must have been more severe than the risks assumed under the contract. *Id.* Third, the non-occurrence of the frustrating event must have been an assumption on which the contract was made. *Id.* Fourth, relief will not be granted if the loss caused by the frustrating event should be placed on the party seeking relief. *Id.* This doctrine has been traditionally applied to three circumstances: "death or incapacity of a person necessary for performance, destruction of a specific thing necessary for performance, and prohibition or prevention by law." *7200 Scottsdale Rd. Gen. Partners v. Kuhn Farm Mach., Inc.*, 909 P.2d 408, 412 (Ariz. Ct. App. 1995).

Geico argues Plaintiff's frustration of purpose claim is not a proper cause of action and, in the alternative, the principal purpose of the contract, insurance coverage for Plaintiff's vehicle, has not been alleged to be destroyed. (Doc. 27 at 13). Plaintiff argues it may properly assert the frustration of purpose doctrine as a cause of action and that this claim does not require allegations that he was unable to drive his car or that it was not covered by the insurance. (Doc. 28 at 9–10).

The Court need not address whether Count II is a proper cause of action because Plaintiff fails to show it warrants relief. The FAC fails to show the first element, that the

principal purpose in the agreement was frustrated. Plaintiff argues the purpose of the Policy is to have "insurance at rates based on an accurate assessment of risk." (*Id.* at 10). While Plaintiff may have been looking for a good deal, the *principal* purpose in buying insurance is to obtain insurance. *See Rawlings*, 726 P.2d at 570 ("Obviously, the insured buys the company's express agreement to pay certain types of claims. . . ."). Without any allegations that his insurance coverage has been hampered, Plaintiff fails to show a claim for frustration of purpose. In addition, as the Court noted above, an inherent risk in buying insurance is that the world will become less risky such that any amount paid for insurance, in hindsight, is too much. This known risk materialized. Therefore, Plaintiff also fails to show the second element, that the frustrated purpose here is one beyond the risk that an insured necessarily accepts in buying insurance. The Court will dismiss Count II.

c. **Arizona Consumer Fraud Act**

Count III alleges a violation of the Arizona Consumer Fraud Act ("CFA"), which prohibits "misrepresentation . . . of any material fact . . . in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby . . . ." A.R.S. § 44-1522(A). To bring a CFA clam, a plaintiff must show "(1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). Although by statute, a plaintiff need not show he was misled, Arizona courts have held that an injury in this context "occurs when the consumer relies on the misrepresentation, even though reliance need not be reasonable." *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980). The misrepresentation must also be material, or "logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction." *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000).

The FAC alleges that Plaintiff renewed his Policy "based on GEICO's failure to disclose to its customers the fact and amount of its excessive profits caused by COVID-19;

the fact that its premiums are not based on an accurate assessment of risk during COVID-19; and the fact that its 'GEICO Giveback' program compares unfavorably with the refund programs of all or nearly all other major auto insurers." (Doc. 21 at ¶ 36). Plaintiff also argues that Geico misled consumers when it said on its website that "[w]e know that shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." (*See id.* at ¶ 9; Doc. 27-1 at 32). Plaintiff argues that this last statement is fraudulent because the Giveback program constituting the "15% credit[,] does not actually pass GEICO's savings on to its consumers." (Doc. 28 at 12).

Geico argues all these alleged misrepresentations are immaterial. (Doc. 29 at 8–9). To the extent that the alleged fraud relates to Geico's profits, and whether its rates compared favorably with other insurers, the Court finds that such alleged misrepresentations are immaterial. It cannot reasonably be claimed that a company commits fraud when it fails to tell consumers of its profits. This is not rationally related to the question of whether an individual would choose to buy an insurance policy. *See Haisch*, 5 P.3d at 944. Likewise, a company that fails to tell consumers that they may get better prices elsewhere cannot be reasonably said to have committed fraud. Arizona maintains a competitive insurance market, which necessarily presumes *consumers* will compare prices among firms. *See* A.R.S. § 20-383(B). However, if, as Plaintiff alleges, Geico represented that its Giveback program was "passing on savings" commensurate with the risk of driving during the pandemic, the Court finds that such a representation is material to the decision to buy insurance.

Geico argues that its statement that it was "passing on savings" is not false or deceptive because it actually instituted the Giveback program. (Doc. 27 at 13). But read in the light most favorable to Plaintiff, the statement implied that Geico was passing on *all* the savings accrued through the reduced driving. *See Lee*, 250 F.3d at 679 (requiring the Court to interpret facts, during the motion to dismiss phase, in plaintiff's favor). Defendant also argues that, even assuming this statement is construed as deceiving, Plaintiff has not alleged that he relied on it when deciding to renew his car insurance. (Doc. 27 at 15).

However, the FAC does allege that Plaintiff renewed his policy "as a result of GEICO's deceptive statements and omissions." (Doc. 21 at ¶ 76). At this stage, and viewing the statement in Plaintiff's favor, such an allegation suffices to show reliance. *See Lee*, 250 F.3d at 679. Therefore, the Court will not dismiss Count III.

### d. Unjust Enrichment

Count IV alleges if Geico is not liable for the other three Counts, Geico is liable for unjust enrichment as an alternative cause of action. (Doc. 21 at ¶ 81). To bring an unjust enrichment claim under Arizona law, a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law." *Murphy v. Woomer*, 478 P.3d 251, 256 (Ariz. Ct. App. 2020). "[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976).

Geico argues an unjust enrichment claim may not be brought because of the Policy's contract governing the parties' relationship. (Doc. 27 at 15). In response, Plaintiff argues that at the motion to dismiss phase, it is inappropriate to dismiss its unjust enrichment claim that is plead in the alternative. (Doc. 28 at 14).

Plaintiff may certainly plead in the alternative, but alternative pleadings do not automatically survive a motion to dismiss. *See Brooks*, 548 P.2d at 1171 (affirming trial court's decision to dismiss unjust enrichment claim where a specific contract governed the relationship of the parties). Alternative claims must also allege facts showing the claim is plausible. *See* Fed. R. Civ. P. 8(a)(2).

Here, the FAC does not allege facts giving rise to a plausible unjust enrichment claim. Plaintiff plainly alleges he received insurance coverage in exchange for the payment he made to Geico. (Doc. 21 at ¶ 35). This constitutes a justification for Geico's enrichment. *See Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) ("A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received

the benefit of her contractual bargain."). Although the FAC states "[t]here is no justification for the enrichment or the impoverishment," (Doc. 21 at ¶ 82), this is a legal conclusion that the Court need not accept, especially given that there are no other specific factual allegations showing how the claim could be plausible. *See Twombly*, 550 U.S. at 555. Because Count IV lacks supporting factual allegations, the Court will dismiss it. *See Balistreri*, 901 F.2d 699 (court may dismiss claim for absence of supporting factual allegations).

### e. Defendants GEICO Indemnity Company and GEICO General Insurance Company

Finally, Geico argues Defendants GEICO Indemnity Company and GEICO General Insurance Company should be dismissed from the action entirely because they have no contractual relationship with Plaintiff. (Doc. 27 at 16). Plaintiff argues that they are properly included in this action under the "juridical link" doctrine because the FAC alleges a common scheme among all three parties. (Doc. 28 at 15). This doctrine, first suggested in the Ninth Circuit and adopted elsewhere, applies to class actions when "all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, . . . [so that] it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact." *Payton v. Cty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002); *see also La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 470 (9th Cir. 1973).

Because Plaintiff alleges fraud under the CFA, Plaintiff must show what each Defendant did or did not do with particularity. Fed. R. Civ. P. 9(b); *Swartz*, 476 F.3d at 765 (holding that allegations of fraud against multiple defendants must describe the role each defendant played). The FAC alleges Defendants GEICO Indemnity Company and GEICO General Insurance Company are affiliated with each other and GEICO Casualty Company. (Doc. 21 at ¶ 4). It also alleges they "jointly participated in[] and are jointly responsible for the unlawful conduct described [in the FAC]." (*Id.*) Beyond these assertions, the FAC fails to describe the role that GEICO Indemnity Company and GEICO General Insurance Company played in the alleged fraud. As a result, the Court cannot

reasonably infer a common scheme among the parties and will, therefore, dismiss them from this action.

## IV. Conclusion

The Court will grant Geico's Motion to Dismiss in part. The only remaining claim is Count III for fraud under the CFA, and the only remaining Defendant is GEICO Casualty Company.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 27) is **granted** in part as described in this Order. The Clerk of Court shall kindly dismiss Defendants GEICO Indemnity Company and GEICO General Insurance Company from this matter.

Dated this 13th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge